ORIGINAL

1   Richard G. McCracken #2748
    McCRACKEN, STEMERMAN, BOWEN & HOLSBERRY
2   1630 South Commerce Street, Suite A-1
    Las Vegas, Nevada 89102
3   Telephone:    (702) 386-5107
    Facsimile:    (702) 386-9848
4
    Attorneys for Plaintiffs
5   State of Nevada Employees Association
    Local 4041, American Federation of State
6   County and Municipal Employees, AFL-CIO

7

8                   UNITED STATES DISTRICT COURT

9                       DISTRICT OF N        CV-S-02-1720-JCM-LRL

10
    STATE OF NEVADA EMPLOYEES        )
11  ASSOCIATION, LOCAL 4041 AMERICAN )
    FEDERATION OF STATE, COUNTY, AND )
12  MUNICIPAL EMPLOYEES, AFL-CIO,    )  **FIRST ORIGINAL**
    (AFSCME) in its Individual Capacity and )  **COMPLAINT FOR INJUNCTIVE**
13  Representative Capacity on behalf of SNEA )  **AND DECLARATORY RELIEF**
    Members at the Nevada Department of )
14  Corrections; SAMUEL COVELLI, and )
    JOSEPH VANACORE,                 )
15                                   )
            Plaintiffs,              )
16                                   )
        v.                           )
17                                   )
    JACKIE CRAWFORD, Director of the Nevada )
18  Department of Corrections (NDOC); )
    FRANKIE SUE DEL PAPA, Nevada Attorney )
19  General; PATRICK KING, Deputy Attorney )
    General of the Nevada Office of the Attorney )
20  General; GLEN WHORTON, NDOC Assistant )
    Director of Operations; STEFANIE )
21  HUMPHREY; CRAIG FARWELL;         )
    DON HELLING; E.K. MCDANIEL;      )
22  JAMES SCHOMIG, MIKE BUDGE; ROBERT )
    HILDRETH; and SHERMAN HATCHER,   )
23  Wardens; DWIGHT NEVEN, CHARLES   )
    McBURNEY, JACK PALMER, Associate )
24  Wardens of Operations,           )
                                     )
25          Defendants.              )
    _____)
26

    COMPLAINT

**FIRST ORIGINAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

NOW COME PLAINTIFFS, the State of Nevada Employees Association, Local 4041 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO (hereinafter, "SNEA"), and SNEA Members SAMUEL COVELLI and JOSEPH VANACORE, and allege:

## JURISDICTION AND VENUE

1.      Plaintiffs have a federal private right of action pursuant to 42 U.S.C. § 1983 and Ex Parte Young to sue for injunctive and declaratory relief for the violation of their rights under the First Amendment to the United States Constitution, made applicable to the States under the Fourteenth Amendment, against individual Defendants in their official capacity who are state officers acting under the color of law.  Jurisdiction therefore arises under 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391 because the conduct alleged herein took place within this judicial district and Defendants are located in this district.

## STANDING AND JUDICIABILITY

2.      Plaintiffs have individual standing based upon their actionable injuries under First Amendment analysis, the traceability of these injuries to Defendants' conduct, and the availability of injunctive and declaratory relief as a remedy.  Plaintiff SNEA has associational standing to represent its members in a lawsuit for injunctive and declaratory relief.  See NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 459 (1958); Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 547 (1996).

3.      The case is ripe and presently judiciable.  To the extent that Defendants have voluntarily ceased any unlawful actions, these actions are nonetheless actionable because "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953).  Moreover, the illegal actions herein

COMPLAINT                                      1

1  alleged, to the extent that they have been rescinded, are nonetheless "capable of repetition yet

2  evading review." Nebraska Press Association v. Stuart, 427 U.S. 539, 546-47 (1976).

3

4  **INTRODUCTION**

5  4.    Defendants are various officers of the Nevada Department of Corrections

6  ("NDOC") and the State of Nevada Office of the Attorney General.

7  5.    The First Amendment guarantees SNEA and its members the right to engage in

8  advocacy, to speak freely, to advocate ideas, to associate with one other, and to petition their

9  government for redress of grievances.

10  6.    Defendants, some or all of them, have interfered with Plaintiffs' First

11  Amendment speech rights through, inter alia:  disciplining, investigating, and threatening

12  SNEA members in retaliation for their protected speech; enforcing overbroad speech

13  restrictions motivated by an intent to suppress the speech of SNEA members; and

14  discriminating against SNEA members' speech based upon the content and/or viewpoint

15  expressed.

16  7.    Defendants, some or all of them, have interfered with Plaintiffs' First

17  Amendment right of association through, inter alia: exacting retaliatory disciplines,

18  investigations and threats against NDOC employees based upon their SNEA association;

19  conditioning job benefits on not getting involved with SNEA; making false and misleading

20  statements of law in an official capacity to dissuade SNEA membership; engaging in disparate

21  treatment of SNEA members as against a second employee association (similarly situated other

22  than for the fact that Defendants oppose SNEA's advocacy); and other similar acts.

23  8.    Defendants, some or all of them, have interfered with the right of SNEA

24  members to petition their government for redress of grievances.

25  / / /

26  / / /

COMPLAINT                                        2

**PARTIES**

9.      Plaintiff SNEA is an association of State of Nevada employees bringing this claim in its individual capacity and in its representational capacity on behalf of its members who are employed by NDOC.

10.      Plaintiff Samuel Covelli is an employee of NDOC.  He is a Sergeant Correctional Officer employed at High Desert State Prison.  Sgt. Covelli is the President of SNEA.

11.      Plaintiff Joseph Vanacore is an employee of NDOC.  He is a Correctional Officer employed at Ely State Prison.  He is an active member of SNEA and serves on its Organizing Committee.

12.      Defendant Jackie Crawford is the Director of NDOC, an agency of the State of Nevada.

13.      Defendant Frankie Sue del Papa is the Nevada Attorney General.

14.      Defendant Patrick King is a Deputy Attorney General of the Nevada Office of the Attorney General.

15.      Defendant Glen Whorton is the NDOC Assistant Director of Operations.

16.      Stefanie Humphrey is the Warden of Warm Springs Correctional Center, Carson City, Nevada.

17.      Craig Farwell is the Warden of Lovelock Correctional Center, Lovelock, Nevada.

18.      Don Helling is the Warden of Northern Nevada Correctional Center, Carson City, Nevada.

19.      E.K. McDaniel is the Warden of Ely State Prison, Ely, Nevada.

20.      James Schomig is the Warden of High Desert State Prison, Indian Springs, Nevada.

/ / /

1    21.    Michael Budge is the Warden of Nevada State Prison, Carson City, Nevada.

2    22.    Robert Hildreth is the Warden of Southern Desert Correctional Center and

3    Indian Springs Boot Camp, Indian Springs, Nevada.

4    23.    Sherman Hatcher is the Warden of Southern Nevada Correctional Center and

5    Jean Conservation Camp, Jean, Nevada.

6    24.    Jack Palmer is the Associate Warden of Operations at Warm Springs

7    Correctional Center.

8    25.    Dwight Neven is the Associate Warden of Operations at Ely State Prison.

9    26.    Charles McBurney is the Associate Warden of Operations at High Desert State

10   Prison.

11

12                    **GENERAL FACTUAL ALLEGATIONS**

13   27.    SNEA is an association of State of Nevada employees whose membership

14   includes approximately 800 correctional officers and support staff employed by NDOC.

15   28.    SNEA advocates on behalf of its members regarding issues of importance both

16   to them and to the people of Nevada generally.  SNEA's focus of advocacy includes the safety

17   and working conditions of prisons operated by NDOC; the proper level of staffing necessary to

18   ensure the safe operation of these institutions; the budgetary priorities of the State of Nevada as

19   they concern the NDOC; and specific matters relating to safety, working conditions, and

20   employee rights at particular NDOC institutions.

21   29.    SNEA advocates on these issues by adopting public positions on issues of

22   concern to its members, by seeking ways to communicate these concerns to policymakers

23   within and outside NDOC, by dialoguing with its members on issues of concern to them, and

24   by recruiting new members to strengthen its ability to advocate.

25   30.    An issue of particular importance to SNEA and its members throughout 2002

26   was a proposed 3% reduction in NDOC's budget for the Fiscal Year 2003.  In an effort to

COMPLAINT                                    4

reduce the budget, Director Jackie Crawford advocated a combination of staff layoffs, hiring freezes, restrictions in overtime, and/or unpaid furloughs.

31.     SNEA adopted a position in opposition to Defendant Crawford's plan out of a concern that layoffs and spending cuts directed at staffing would have a negative impact on safety and working conditions at NDOC institutions.

32.     In addition to advocating on budgetary matters affecting NDOC, SNEA advocates on safety and working conditions at particular NDOC institutions.  SNEA advocates on its members' behalf by canvassing their concerns and seeking ways to effectively resolving these concerns with the appropriate NDOC officials, including the named Defendants in this suit.

33.     In order to carry out this work, SNEA members have organized themselves into committees working on different matters.  SNEA has established or is establishing committees in each of the institutions operated by the NDOC.

34.     As a further part of its associational activity, SNEA conducts membership recruitment among NDOC employees in order to strengthen its ability to advocate.  Such membership recruitment has been conducted by setting up information tables or otherwise communicating with employees at sites on NDOC property that NDOC permits to be used for such activity.

### Retaliation for Speech and Association at Warm Springs Correctional Center

35.     In or around April of 2002, NDOC built a pond inside the secure perimeter of Warm Spring Correctional Center (WSCC).  The purpose of the pond was to beautify the prison.

36.     The pond was about three feet deep, and had a stone or rock waterfall built at one end.

37.     The pond was constructed in an area within the prison yard accessible to inmates, and was cordoned off by a fence approximately a foot and one-half high.

COMPLAINT                                                                 5

1    38.   The pond represented a security risk due to its location and accessibility.

2    39.   A committee of SNEA members formed at WSCC during this time to

3   communicate about issues of concern to staff at the institution.  Lt. Michael Hoffman was a

4   member of this SNEA committee.

5    40.   On or about April 13, 2002, in an effort to measure and communicate the

6   opinions of WSCC employees regarding the pond and its security risks, Lt. Hoffman and

7   another NDOC employee formulated a short questionnaire soliciting yes or no answers.  The

8   questionnaire was circulated among WSCC employees.  Some 40 employees responded.

9    41.   The questionnaire was circulated in a manner that created no interference with

10   the performance of any officer's duty.

11    42.   The objective of the questionnaire was to communicate employee concern

12   regarding the location and suitability of the pond.

13    43.   Upon learning of the questionnaire, Defendants Warden Stephanie Humphrey

14   and AWO Jack Palmer disciplined and/or threatened discipline against the members of the

15   SNEA committee.

16    44.   Defendants Humphrey and Palmer issued letters of reprimand against SNEA

17   committee member Lt. Hoffman, based on their view that "the opinion of the officers would

18   have eventually been presented in the form of an issue through SNEA (State of Nevada

19   Employee's Association)."  The letter stated: "The formation of a committee to create a

20   seditious and insurgent atmosphere at this institution is not only unauthorized but also created

21   a hostile work environment."

22    45.   Defendants Humphrey and Palmer issued a similar letter reprimanding SNEA

23   committee member Lt. Shirley Diepen for her "involvement in the formation of a committee

24   which was solely intended to create a seditious and insurgent atmosphere at this institution."

25   / / /

26   / / /

COMPLAINT                                    6

46.     On or around July 2, 2002, Lt. Hoffman received a substandard employment evaluation based on the pond incident.  On or around September 11, he received a negative write-up on a performance card based on the pond incident that will be used in next year's evaluation.

47.     Other employees on the SNEA committee were similarly retaliated against.

48.     AWO Palmer told SNEA committee member Sgt. Brian Henley that his continued involvement with SNEA committees such as this one would impact negatively on his future opportunities for promotion.

49.     Defendants Humphrey and Palmer's motivation in taking these actions was to discourage SNEA association and speech.

50.     On or around September 2, 2002, inmate Timothy Orr fell into the pond.

51.     In the Fall of 2002, NDOC officials ordered that the pond at WSCC be filled in.

52.     On information and belief, Director Crawford ordered the pond to be filled in because she determined that its location within the WSCC yard was not appropriate.

**Restriction on SNEA speech through ad hoc "no sticker rules."**

53.     In late August 2002, SNEA members distributed a sticker bearing the message "Don't Balance Your Budget on Our Backs—Safety First!" to correctional officers coming on shift at various NDOC facilities.

54.     Wardens at two or more NDOC institutions ordered employees to remove the stickers.

55.     Defendant Jack Palmer at WSCC issued a memorandum stating that "[a]ny stickers/buttons that may be affiliated with an Employee Association must have prior approval from me or the Warden before they may be posted on employee uniforms or any areas other than the Association Bulletin Boards."

/ / /

COMPLAINT                                        7

**Retaliation for Speech at Ely State Prison**

56.     In or about late August and early September 2002, SNEA members at Ely State Prison (ESP) engaged in efforts to communicate about budgetary and working conditions, and to recruit new members.  Employees were given the opportunity to sign two petitions.

57.     The "Shift Petition" canvassed employee opinion regarding an impending change in the daily shift from 12 hours to 8 hours per day.

58.     The "Picketing Sign-up" sought employee commitment to attend a public picketing demonstration that would be held in Carson City regarding the budget and the right to express employee opinion over it.

59.     The outreach was performed in the ESP Gatehouse, which is on an area authorized for employee speech.

60.     On or about September 10, 2002, several SNEA members presented Warden McDaniel with the "Shift Petition" signed by approximately 191 ESP employees.

61.     Defendants E.K. McDaniel and Dwight Neven were aware that Plaintiff Joseph Vanacore was an organizer of this SNEA speech activity.

62.     On or about September 10, 2002, Defendants placed Officer Vanacore on administrative leave pending an internal affairs investigation.

63.     Defendants E.K. McDaniel and Dwight Neven were aware that Officer Joni Drahos was an organizer of this SNEA speech activity.

64.     On or about September 12, 2002, ESP officials revoked Officer Drahos' right to instruct in ESP's officer training program.

65.     Other ESP employees who had signed the Shift Petition were similarly relieved of teaching duty.

66.     Defendants subsequently restored most or all of these instructors without explanation other than to attribute it to an "unfortunate communication" among management.

///

COMPLAINT                                                    8

67.     In September 2002, four ESP employees withdrew their signatures from the petitions. On information and belief, Defendants threatened or otherwise pressured these employees into withdrawing their signatures.

68.     Many ESP employees are reluctant to exercise speech rights or to associate with SNEA for fear of retaliation.

### Overbroad prior restraints on SNEA speech the content and viewpoint of which NDOC opposes

69.     In or about late August and early September 2002, SNEA members at other NDOC institutions engaged in similar speech activities to those described above.

70.     On or about Wednesday, September 11, Assistant Director of Operations Glen Whorton issued a directive to all NDOC wardens stating: "Effective immediately, employee organizations are not allowed to conduct the following activities while on duty or on NDOC property: Petition drives, Recruitment, Information tables; Handing out papers/flyers to staff coming on shift."

71.     Wardens at various NDOC institutions posted this memorandum or created their own similar memoranda banning employee speech.

72.     The September 11 speech restraint was instituted during a period that SNEA was advocating on the issue of budget cuts in opposition to Director Crawford's budget proposal. The budget issue was largely resolved in late September, 2002.

73.     On October 1, 2002, after SNEA had been prevented from engaging in speech on the budget matter for several weeks, ADO Glen Whorton issued a new memorandum to Wardens. It stated: "In the recent past there have been concerns regarding employee activities at the institutions and facilities. This concern was over possible disruption based upon issues developed because of the decline in State revenue. The tension regarding seems to be in decline [sic], and we therefore intend to relax the controls established by my email on 9/10/02. [¶] At the present time, Wardens may authorize employee organizations to set up tables in

COMPLAINT                                    9

their entry areas for the use of the employee organizations. Employee organizations are allowed to pass out materials to employees who are departing the facility. Further, they are allowed to distribute materials to the mailboxes of their membership."

74. SNEA was the only employee organization against which the speech restraints were fully enforced. On information and belief, on or around September 15, 2002, members of the Nevada Corrections Association were permitted by prison officials at Northern Nevada Correctional Center to distribute a full-page flyer to the mailboxes of employees at the prison describing NCA's advocacy efforts and announcing the results of recent internal elections. This was permitted despite Warden Helling's edict that "[a]ny Employee Association activities on institutional grounds, including the parking lot, is prohibited."

## Retaliation against Correctional Officer Joseph Vanacore for association with SNEA

75. Officer Joseph Vanacore has been employed at Ely State Prison (ESP) since 1995. Officer Vanacore has been a visible union and employee advocate at ESP. He became active with SNEA during 2002, and is a member of the SNEA's organizing committee.

76. On or about August 7, 2000, Officer Vanacore served as spokesperson for a delegation of SNEA members in a meeting with ADO Whorton that had been consensually arranged for the purpose of addressing certain issues.

77. Following the meeting, SNEA circulated a memorandum to employees at ESP apprising them of what had transpired at the meeting. The memorandum spoke in respectful terms of ADO Whorton, and addressed issues such as the wearing of union pins and the "staffing versus security" issue.

78. Officer Vanacore, as a courtesy, provided ADO Whorton with a copy of the memorandum.

79. On information and belief, ADO Whorton was angry with the tone and content of the leaflet.

COMPLAINT                                    10

80.   On information and belief, NDOC began investigating Officer Vanacore for his SNEA activity in July or August 2002.

81.   During this time, Officer Vanacore was warned by a superior to "lay low" because he was being investigated for his SNEA activity.

82.   In late August and early September 2002, Officer Vanacore participated with his SNEA committee at ESP in gathering signatures on petitions and recruiting members, as described above.

83.   On or about September 10, 2002, NDOC issued an order prohibiting Officer Vanacore from entering ESP property.

84.   On or about September 10, 2002, NDOC placed Officer Vanacore on indefinite administrative leave.

85.   These actions were taken in retaliation for Officer Vanacore's SNEA association and speech.

### Retaliation Against SNEA President Sgt. Samuel Covelli Based Upon Speech and Association with SNEA

86.   Sgt. Samuel Covelli is the elected President of SNEA.

87.   Sgt. Covelli is a Sergeant Correctional Officer at High Desert State Prison (HDSP) where he has worked for approximately 17 years.

88.   Until November 7, 2002, Sgt. Covelli was the Property/Intake Sergeant at HDSP, responsible for operating the property room at HDSP and for supervising intake of inmates into NDOC's southern region.

89.   During his tenure of employment at NDOC, Sgt. Covelli has faithfully carried out his duties towards NDOC and the State of Nevada.

90.   Linda Covelli is a staff member of SNEA. Her primary duties involve addressing SNEA member grievances against their employers.

/ / /

COMPLAINT                                      11

91.     On information and belief, Defendants Crawford and Schomig are aware that Linda Covelli is Sgt. Covelli's wife.

92.     Defendant Schomig came on as Warden of HDSP in the spring of 2002. Warden Schomig was aware of Sgt. Covelli's SNEA presidency and often questioned him regarding it.

93.     During the summer of 2002, Sgt. Covelli completed all requirements for promotion to lieutenant.  Warden Schomig was aware of Sgt. Covelli's interest in being promoted to lieutenant, and has told Sgt. Covelli that he is qualified for promotion.

94.     On or about September 2, 2002, Director Crawford offered Sgt. Covelli the opportunity of promotion in exchange for Sgt. Covelli's getting SNEA Executive Director Scott MacKenzie write a letter supporting her budgetary positions.  Sgt. Covelli declined to do so.

95.     Director Crawford stated that this was going to be a fight, that Covelli needed to be on the right side of the fight, and that she was going to win.

96.     During this time and thereafter, Warden Schomig expressed growing hostility against Sgt. Covelli and SNEA.  On or about September 25, 2002, Warden Schomig ordered an investigation of Sgt. Covelli's phone records from the Property Room.

97.     On September 26, 2002, Warden Schomig called Sgt. Covelli to a meeting.  He told Sgt. Covelli that an outside law enforcement agency was on the property investigating leave and phone records.  Warden Schomig held up several pages of computer pages and told Sgt. Covelli that they represented phone records from his extension at the Property Room for the month of August.  Warden Schomig conceded that the phone log revealed no wrongdoing.

98.     During the September 26 meeting, Warden Schomig told Sgt. Covelli that "SNEA is not a union" and that it is not allowed to exist as such.  He cited as authority for that statement the opinion of a Deputy Attorney General and the Governor's Chief-of-Staff.

/ / /

COMPLAINT                                            12

1    99.    On or about October 3, 2002, Sgt. Covelli called Defendant Deputy Attorney

2    General Patrick King to inquire about reports that Mr. King had told SNEA member Kevin

3    Ranft that it is unlawful for state employees to join labor unions. Mr. King stated to Sgt.

4    Covelli: "you are not allowed to belong to a union as a state employee."

5         100. On or about October 3, an incident occurred in the HDSP infirmary that Sgt.

6    Covelli regarded as one of important concern. The incident involved providing an inmate with

7    a scalpel in order to "test" correctional officers' ability to find them.

8         101.    Such "testing" is absolutely unprecedented and was conducted pursuant to no

9    NDOC stated policy or guideline.

10        102.    It is a category B felony under Nevada law for a person who is incarcerated in

11   the state prison to possess any sharp instrument. NEV. REV. STAT. § 212.185.

12        103.    It is a category B felony under Nevada law for a person not authorized by law to

13   furnish a deadly weapon to a state prisoner. Id. at § 212.160.

14        104.    Upon learning of the incident, Sgt. Covelli sent a report to SNEA's offices. A

15   copy of the report was sent to the Governor's office. SNEA personnel contacted John L.

16   Smith, a journalist for the Las Vegas Review-Journal.

17        105.    On October 9, 2002, Warden Schomig summoned Sgt. Covelli into his office.

18   He accused Sgt. Covelli of orchestrating a smear campaign against him.

19        106.    Warden Schomig indicated that NDOC was reviewing Sgt. Covelli for

20   promotion, but that he was in the "undecided" column. Warden Schomig told him that "we

21   don't have a problem with your work. It's your politics."

22        107.    On October 16 and October 20, 2002, the Las Vegas Review-Journal published

23   two columns written by John L. Smith that were critical of the NDOC. The first column was

24   entitled, "Stunt leaves prison workers wondering if inmates are running the asylum." It

25   described the incident at the HDSP infirmary.

26   / / /

COMPLAINT                                    13

108.   The second column was entitled, "From tower of denial, prison leaders see nothing to indicate crisis." It discussed safety and budgetary issues confronting NDOC.

109.   Both articles quoted Linda Covelli making critical statements of the NDOC's safety policies and the testing incident.

110.   On November 7, 2002, at approximately 8:45 a.m., NDOC commenced what it called an "audit" of the HDSP's Property Room. Warden Schomig and a group consisting of wardens and other officers entered the HDSP property room. AWO Charles McBurney announced that they were there to conduct an "audit" and that Sgt. Covelli must surrender his keys immediately.

111.   At approximately 9:30 A.M., Warden Schomig entered the operations building, proceeded to the Sergeant's office, which had numerous staff members present, and stated: "The property room has been declared a crime scene. No one is to enter that building without my permission until further notice."

112.   Sgt. Covelli was immediately reassigned.

113.   Certain items were removed from the Property Room and stored for several days in Warden Schomig's conference room. On information and belief, NDOC staff with no connection to the audit or any investigation were permitted to see the items.

114.   To date, neither NDOC nor Officer Schomig has made any allegations of wrongdoing against Sgt. Covelli. He is not currently under indictment for any criminal wrongdoing, and no criminal prosecution is currently underway. NDOC has not notified him of an ongoing internal affairs investigation.

115.   Subsequent to the "audit" at HDSP, NDOC has instituted audits at prison property rooms at some other institutions. In no case has NDOC representatives declared these other property rooms to be "crime scenes." In no case has NDOC representatives ordered the staff person in charge of the property room to leave the premises. In no case has NDOC relieved the Property Sergeant of duty.

COMPLAINT                                     14

116.    Many officers at HDSP who used to talk and/or associate with Sgt. Covelli no longer do so.  Many officers who used to wear SNEA pins no longer do so.

117.    On information and belief, although there are at least two other employee associations active within the NDOC, this is the first time that NDOC has ever ordered such an action directed at any association officer.

## Threat and Condition of Benefits to Officer Humberto Guadalupe

118.    Correctional Officer Humberto Guadalupe is employed at HDSP.  He works as Sgt. Covelli's assistant in the HDSP Property Room.

119.    On November 7, 2002, at approximately 8:00 A.M., Warden Schomig called Correctional Officer Guadalupe, into his office.  Warden Schomig informed Officer Guadalupe that they were about to perform an audit of the HDSP Property Room.  He explained that this investigation had been going on for six weeks and that phone records had been subpoenaed by the Attorney General's office.  Warden Schomig offered Officer Guadalupe the opportunity to disclose anything he would like before they conducted the audit.  At that point, he gave Officer Guadalupe a formal letter of commendation for his work in the property room, and stated that he understood that Officer Guadalupe was a good and ethical person.

120.    Officer Guadalupe had nothing to declare against Sgt. Covelli.

121.    Sometime after 9:00 A.M. Officer Guadalupe was summoned back to Warden Schomig's office.  Warden Schomig rescinded the letter of commendation.  He was warned not to "back" Sgt. Covelli.

122.    Around 10:45 A.M. Warden Schomig saw Officer Guadalupe talking to Sgt. Covelli.  Officer Guadalupe was again summonsed to the Warden's office.  Warden Schomig "promised" him that if he "backed" Covelli, he would end up in the same boat.

123.    Officer Guadalupe is under continuing threat of retaliation based upon his association with SNEA and with Sgt. Covelli.

COMPLAINT                                          15

**Official Misstatements of Law to Discourage Association with SNEA**

124.    Correctional Officer Kevin Ranft is an employee of the High Desert Correctional Center, and a member of SNEA.  On or about September 4, 2002, Officer Ranft called the Nevada Office of the Attorney General to complain that he had been denied permission to leave the workplace to vote.  Officer Ranft was connected to Deputy Attorney General Patrick King.

125.    In the course of their conversation, Officer Ranft stated that it was important to vote because his union is supporting legislation that would create collective bargaining rights for public employees.

126.    In response to that statement, Deputy Attorney General King told Officer Ranft that public employees in Nevada had no legal right to join labor unions.

127.    He warned Officer Ranft to be careful because certain employee associations active within NDOC were being reviewed for his office for possible criminal indictment because they were acting like real labor unions.

128.    He told Officer Ranft that the "Federal Labor Relations Board" was also investigation the employee associations at issue and that any findings would be added to the indictment.

129.    On information and belief, Deputy Attorney General King was acting under the authority and direction of Attorney General Del Papa in making these threatening and erroneous statements of law and to state employees.

**General**

130.    Defendants have created or tolerated an atmosphere where threats against NDOC members based upon their SNEA membership are common.  Defendants and their direct subordinates have told numerous NDOC employees that their opportunities for promotion and other job benefits may be adversely affected by their association with SNEA.

COMPLAINT                                    16

131.   Many NDOC employees who once SNEA wore pins no longer do so.  An atmosphere of intimidation and fear prevails.

132.   Together these various acts have hampered and continue to hamper SNEA's ability to carry out its advocacy work.

133.   On information and belief, Defendants Jackie Crawford and Glen Whorton have ordered and/or ratified the acts of retaliation and speech suppression committed by wardens at various institutions.

**Affirmative NDOC Acts in Favor of the Nevada Correctional Association**

134.   The Nevada Corrections Association is an association consisting of correctional officers and management at NDOC.

135.   On information and belief, Defendant Crawford is, or was until recently, a member of NCA.

136.   On information and belief, NCA members have not been threatened, disciplined, and/or retaliated against based upon their associational activities during the time frame of the events here in question..

137.   On information and belief, NDOC has assisted the establishment of NCA by granting its members administrative leave to conduct associational activities at periods when leave was being denied to SNEA members and employees generally.

138.   On information and belief, NDOC management has not evenly enforced its speech bans as against NCA activity, despite vigorous enforcement against SNEA.

**FIRST CAUSE OF ACTION**

139.   Incorporating by reference paragraphs 1 through 138, Defendants have violated the First Amendment of the United States Constitution guarantee of the right to Free Speech.

a.   Suppressing Plaintiffs' speech rights by issuing facially overbroad restraints on all employee speech, the motivation and effect of which was to unreasonably

COMPLAINT                                           17

restrain the speech of SNEA members;

b.  Suppressing Plaintiffs' speech rights by requiring the removal of SNEA stickers and requiring prior approval for such speech;

c.  Suppressing the aforesaid speech because NDOC disagrees with the content and/or the viewpoint of that speech;

d.  Relieving Plaintiff Samuel Covelli of his duty in retaliation for speech on matters of public concern;

e.  Denying Samuel Covelli a promotion to Lieutenant based upon his speech.

f.  Instigating a groundless retaliatory investigation of Plaintiff Officer Joseph Vanacore based upon his protected right of speech;

g.  Retaliating against SNEA members at Ely State Prison and other NDOC institutions for exercising their right to speak about matters of public concern and to enlist support in a public demonstration regarding budget cuts and speech rights;

h.  Retaliating against SNEA members at Warm Spring Correctional Center for exercising their right to speak about the safety threats caused by a pond on prison property;

i.  Other similar adverse actions that have created and shown toleration for an environment of apprehension and fear regarding the exercise of protected speech rights.

## PRAYER FOR RELIEF FOR FIRST CAUSE OF ACTION

WHEREFORE, Plaintiffs pray as follows:

1.  For a preliminary and permanent injunction prohibiting Defendants from interfering with the protected speech rights of SNEA members by carrying out retaliatory investigations, suspensions, threats and adverse job actions based upon protected free speech, and imposing broad prior

COMPLAINT                                   18

1     restraints on protected free speech due to Defendants' disagreement with

2     the content and viewpoint expressed.  The personnel records of

3     adversely affected employees must be expunged of any disciplinary

4     actions taken in retaliation for protected rights; employees who have

5     been denied promotions or other benefits must be granted such benefits.

6     2.     For declaratory relief that Defendants' conduct complained of herein

7            violates the First Amendment Right to Freedom of Speech of Plaintiff's

8            members;

9     3.     For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

10           and

11    4.     For such other and further relief that the Court deems just and proper.

12

13                        **SECOND CAUSE OF ACTION**

14    140.   Incorporating by reference paragraphs 1 through 139, Defendants have violated

15    the First Amendment of the United States Constitution's guarantee of the right to Free

16    Association.  They have done so by implementing a policy of interference with the First

17    Amendment right to association of SNEA members.  The policy has manifested itself in

18    numerous acts:

19    a.     Instigating a groundless and retaliatory "audit" of the property room at HDSP.

20    b.     Relieving Plaintiff Samuel Covelli of his duties as Property/Intake Sergeant;

21    c.     Offering Sgt. Covelli a promotion based upon a quid pro quo change in SNEA's

22           position in a manner of public concern, and/or creating the impression that

23           promotion to the rank of lieutenant was contingent on SNEA's changing its

24           position on matters of public concern;

25    d.     Denying Sgt. Covelli promotion to Lieutenant based upon his SNEA

26           membership.

COMPLAINT                                    19

e.      Conditioning a Letter of Commendation to Correctional Officer Humberto Guadalupe upon his denouncing SNEA President Samuel Covelli;

f.      Threatening Officer Guadalupe with retaliation if he supported SNEA President Samuel Covelli, and continuing to retaliate against Officer Guadalupe based upon his association and support for Sgt. Covelli.

g.      Instigating a groundless and retaliatory investigation of Plaintiff Officer Joseph Vanacore for his association with SNEA;

h.      Using the Nevada Office of the Attorney General to issue erroneous legal opinions to the effect that it is unlawful for public employees to join SNEA;

i.      Using the Nevada Office of the Attorney General to make unfounded threats of criminal investigation and/or indictment;

j.      Placing Correctional Officer Joseph Vanacore on Administrative Leave in retaliation for his association with SNEA;

k.      Issuing a written reprimands against Lt. Hoffman and other employees associated with a SNEA committee at Warm Springs Correction Center, and subsequently taking other adverse personnel actions against them.

l.      Threatening the loss of future job opportunities to Sgt. Brian Henley for his association with a SNEA committee working on the pond issue;

m.      Threatening other NDOC employees for their association with SNEA;

n.      Facilitating the formation and activities of the Nevada State Correctional Association, an organization to which Defendant Jackie Crawford belongs or until recently belonged;

o.      Other similar adverse actions that have created and shown toleration for an environment of apprehension and fear regarding the exercise of protected associational rights.

///

COMPLAINT                                              20

## PRAYER FOR RELIEF FOR SECOND CAUSE OF ACTION

WHEREFORE, Plaintiffs pray as follows:

1.    For a temporary restraining order, preliminary and permanent injunction prohibiting Defendants from carrying out a policy of interference with the First Amendment rights of SNEA members employed at NDOC, and in particular: carrying out retaliatory investigations of Sgt. Samuel Covelli, Officer Joseph Vanacore, and any other SNEA member based upon their associational rights; restoring SNEA members' employment status its prior condition (including expunging personnel files of reference to any retaliatory act); taking or threatening future adverse employment actions based upon protected associational rights; conditioning job opportunities on non-involvement with SNEA; making false statements of law regarding the right of public employees to join and form labor unions.  SNEA members who have been denied promotions or other benefits based upon their SNEA association shall be granted those benefits.

2.    For declaratory relief that Defendants' conduct complained of herein violates the First Amendment Right to Freedom of Association of Plaintiff's members;

3.    For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.    For such other and further relief that the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

COMPLAINT                      21

## THIRD CAUSE OF ACTION

141.   Incorporating by reference paragraphs 1 through 140, Defendants have violated the First Amendment of the United States Constitution's guarantee of the right to petition the government for right of grievances.  They have done so by:

   a.   Suppressing SNEA efforts to canvass the concerns of NDOC employees and to present these concerns to government policymakers;

   b.   Retaliating against SNEA members who seek to bring issues of public and associational concern to the attention of government policymakers;

   c.   Other similar adverse acts that have created and shown toleration for an environment of apprehension and fear regarding the exercise of protected grievance rights acts;

## PRAYER FOR RELIEF FOR THIRD CAUSE OF ACTION

1.   For a temporary restraining order, preliminary and permanent injunction prohibiting Defendants from interfering with the First Amendment right to Petition the Government for Redress of Grievances.

2.   For declaratory relief that Defendants' conduct complained of herein violates the First Amendment right to Petition the Government for Redress of Grievances.

Dated: December 22, 2002

Respectfully submitted,

McCRACKEN, STEMERMAN,
BOWEN & HOLSBERRY

By Richard G. McCracken

50/C:\My Documents\RGM\NVCorrections Complaint2.wpd
12/12/2002/10:51:C0 UNV Snea v. Correct

COMPLAINT                                             22